# Rochester and Pittsburgh Coal & Iron Co. *v.* Makoma Coal Co., Appellant.

*Contract—Ambiguity—Construction by parties—Coal broker—Principal or agent—Parol evidence—Evidence.*

1. Parties to a contract in which there exists an ambiguity have always a right to put their own construction upon it, and if it appears that such construction was mutual, it may be accepted by court and jury, although it might not be the construction the court would put upon it by an inspection of the instrument alone.

2. Where the contract is ambiguous, parol evidence is admissible to show the circumstances attending its execution, and the subsequent acts of the parties showing the construction which they placed upon it.

3. Where a contract between a coal mining company and a coal broker provided for delivery of coal by the mining company to a third party, and writings constituting the contract were as consistent with agency of the coal broker, as with the theory that he was acting on his own account as principal, as he claimed, parol evidence is admissible to show that the parties construed the contract as treating the broker as an agent, and not as a principal who purchased the coal on his own account.

Argued May 23, 1921. Appeal, No. 18, May T., 1921, by defendant, from judgment of C. P. Dauphin Co., March T., 1919, No. 167, on verdict for plaintiff, in case of Rochester & Pittsburgh Coal & Iron Co. v. Makoma Coal Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for money had and received by defendant as agent. Before WICKERSHAM, J.

The opinion of the Supreme Court states the facts.

The trial judge refused a request for binding instructions for defendant.

Verdict and judgment for plaintiff for $85,008.49. Defendant appealed.

*Error assigned,* inter alia, was above instruction, quoting it.

*Charles L. Bailey, Jr.,* with him *William Jenkins Wilcox,* for appellant.

*Arthur H. Hull,* of *Beidleman & Hull,* with him *B. M. Clark* and *Heath S. Clark,* for appellee.

OPINION BY MR. JUSTICE FRAZER, July 1, 1921:

Plaintiff is engaged in the business of mining and selling coal, while defendant is a jobber in coal but not a

mine owner. In 1915, defendant, learning that the Lehigh Coke Company desired to purchase a large quantity of coal for the manufacture of coke, procured samples from plaintiff and submitted them to the Lehigh Coke Company to determine whether the product of the coal company's mines was suitable for the coke company's purposes. The coal was found to be satisfactory and a contract was entered into between defendant and the Lehigh Coke Company, whereby the former sold to the latter approximately 2,640,000 tons of coal, shipments to cover a period of five years. The contract was marked executed "in quadruplicate" and two copies sent by defendant to plaintiff accompanied by a letter stated that "if you will attach one of these contracts to a letter stating that same is in accordance with your wishes, we will very much appreciate it......I want to add my sincerest thanks to you for your courteous coöperation in assisting us in obtaining this business, it certainly will not be soon forgotten. I have every reason to believe that this will be a very satisfactory arrangement for your company." Plaintiff replied: "We accept this contract and understand that we shall ship this coal to the Lehigh Coke Co. for your account and subject to all the terms and conditions of your contract with the Lehigh Coke Co. with the exception of the price. We are to charge you $1.20 per gross ton at the mines [the contract was $1.30] subject to the various provisos as to the charge of the cost of production contained in the contract between the Makoma Coal Co. and the Lehigh Coke Co. In other words, it is understood that you, in executing the contract with the Lehigh Coke Co. will take from us any coal ordered by the Lehigh Coke Co. under this contract." The contract was carried out for a time and coal shipped by plaintiff direct to the Lehigh Coke Company and bills for the coal submitted by plaintiff to defendant, to whom the Lehigh Coke Company paid for the coal and defendant remitted to plaintiff the proceeds, after deducting ten.cents a ton for

commission. Changes were made in the price from time to time by reason of the additional cost of labor, the opening of the war and the orders of the fuel administration.

In November, 1918, defendant received from the Lehigh Coke Company the sum of $79,488.13, due for current shipments, but refused to remit to plaintiff with the usual deduction of ten per cent commission, claiming a set-off in excess of the above amount by reason of a shortage in previous shipments of coal under the contract. Plaintiff thereupon brought suit for the price of the coal against defendant, "as the agent for the plaintiff as the undisclosed principal," averring that the only interest of defendant in the contract was the right to receive a commission of ten cents per ton. Defendant denied agency and averred that in making the contract it acted on its own account. The jury found for plaintiff in the total amount of its claim, with interest, amounting in all to $85,008.49. Motions for a new trial and for judgment non obstante veredicto were subsequently made and dismissed by the court below, and defendant has appealed.

The right of set-off for plaintiff's alleged breach of contract to ship depended upon whether defendant had an interest in the agreement as principal, or whether it acted merely as plaintiff's agent. The principal contention of defendant in support of the motion for judgment non obstante veredicto is that the contract between the parties is in writing, with its terms clearly expressed, and shows defendant was an independent contractor or jobber and not in any sense the agent of plaintiff company and that parol evidence could not be considered to contradict the terms of the writing in this respect. In support of its position numerous cases were cited involving the application of the parol evidence rule, and recent decisions in Atchison v. United Presbyterian Board, 266 Pa. 47, and Lenox Coal Co. v. Duncan-Spangler Co., 265 Pa. 572, holding that only in cases of doubt or where

there .is some ambiguity in the contract,—so that the construction placed upon it by the parties themselves becomes important,—can parol evidence be resorted to. On the other hand, the parties to a contract in which there exists an ambiguity have always a right to put their own construction upon it and if it appears that such construction was mutual it may be accepted by the court and jury, although it might not be the construction the court would put upon it by an inspection of the instrument alone: Wright v. Gas Co., 2 Pa. Superior Ct. 219. The writing must be permitted to operate according to the intention of the parties, and, when the meaning is doubtful, the circumstances attending its execution and the subsequent acts of the parties may always be considered in determining the intent with which the words were used: Berridge v. Glassey, 112 Pa. 442, 455; Swigert v. Hartzell, 20 Pa. Superior Ct. 56. Such testimony does not seek to vary the terms of the writing nor to show that anything was omitted from its provisions, but merely tends to prove the meaning of the parties at the time the contract was executed: Cummins v. Ins. Co., 197 Pa. 61, 67.

In our opinion there exists in the present contract such ambiguity as will permit the introduction of evidence to show the construction placed upon the writing by the parties. The agreement between plaintiff and defendant is made up of the written contract between defendant and the Lehigh Coke Company and the two letters passing between plaintiff and defendant with reference to the agreement, extracts from which are quoted above. These documents, considered together, are as consistent with the theory of agency as with the theory that defendant was acting on its own account as principal. Several expressions used can be explained only on the ground that they were presumably made by a person prepared, not only to ship, but to mine the coal and as it is conceded defendant was merely a broker and owned no mines this is a circumstance to be considered in

determining the true construction of the contract. When we turn to the subsequent correspondence between the parties and the circumstances accompanying the execution of the agreement, we find considerable evidence in support of the theory of agency. At the time the original contract was prepared it was the result of negotiations between representatives of plaintiff and of the Lehigh Coke Company,—Walter P. Maguire, on behalf of defendant, testifying that all he did was to sign the contract when prepared and presented to him. When changes were to be made defendant notified the Lehigh Coke Company that they must be passed upon and approved by the legal representatives of the plaintiff. In the correspondence between the parties, defendant constantly referred to plaintiff company as principal. Without referring in detail to the large mass of testimony taken at the trial of the case, we deem it sufficient to say that the ambiguity in the three separate writings constituting the contract justifies the admission of evidence to show the construction the parties placed on their own contract and this evidence warranted submission to the jury of the question whether or not defendant was merely the agent of plaintiff in making the contract with the Lehigh Coke Company.

The case was carefully submitted in an elaborate charge in which the respective contentions of the parties and their legal rights were clearly defined.

The judgment is affirmed.