ZIMPRO, INC., Respondent,

v.

COMMISSIONER OF REVENUE,
State of Minnesota.

No. C9–82–1071.

Supreme Court of Minnesota.

Nov. 4, 1983.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for appellant.

James W. Littlefield, Steven Z. Kaplan, St. Paul, for respondent.

AMDAHL, Chief Justice.

This case arises out of the purchase of sewage treatment equipment by the Metropolitan Waste Control Commission (hereinafter MWCC). We previously remanded this case to the district court to make additional findings of fact. *See Zimpro, Inc. v. Commissioner of Revenue,* 308 N.W.2d 809, 811 (Minn.1981).

On October 11, 1978, respondent Zimpro brought *Zimpro I,* a declaratory judgment action, seeking a determination that respondent's sale of sewage treatment equipment was a retail sale of personal property under Minnesota Statutes chapter 297A. The Ramsey County District Court granted respondent's motion for summary judgment holding that respondent's sale of sewage treatment equipment to the MWCC was a retail sale of tangible personal property. Consequently, the earlier acquisition of materials prior to assembly and sale to MWCC did not constitute a taxable event under Minn.Stat. §§ 297A.01, subd. 4, and 297A.02 (1982). Ordinarily, the retail sale of tangible personal property is a taxable event, but because the sale was to a state entity, *see* Minn.Stat. §§ 473.501–.549 (1982), the transaction was exempt from sales tax. *See* Minn.Stat. § 297A.25(1)(j) (1982).

In *Zimpro I,* we held that the tax consequences of respondent's sale to MWCC were controlled by the "characteristics of the purchased equipment, the mode of its installation and the intent of the parties with regard to that installation." *Zimpro I,* 308 N.W.2d at 811. The original record did not provide us sufficient facts to determine whether or not the sewage treatment equipment, as purchased and installed, constituted an improvement to real property. The case was remanded to the district court with directions that findings be made regarding 13 specific questions formulated by this court.

Additional discovery was conducted and on July 15, 1982, the district court conducted an on-site inspection of the MWCC Pigs Eye plant where respondent's equipment is housed. Subsequent to the inspection, the district court received additional testimony, found facts with respect to the 13 questions we formulated, and then reaffirmed its previous ruling. The Ramsey County District Court entered a judgment for respondent on August 3, 1982.

Under Minnesota Statutes chapter 297A, a taxable event occurs when there is a retail sale of tangible personal property. *See* Minn.Stat. § 297A.02 (1982). The statute defines a retail sale as "a sale for any purpose other than resale in the regular course of business." Minn.Stat.

§ 297A.01(4) (1982).[1] Tangible personal property is defined as "corporeal personal property of any kind whatsoever, including property which is to become a fixture or which is to lose its identity by incorporation in or attachment to real property." Minn. Stat. § 297A.01(11) (1982).

The critical issue in this case is "which of two events is taxable: respondent Zimpro's purchase of equipment in fulfillment of its contract with the Metropolitan Waste Control Commission; or Zimpro's sale of equipment to the MWCC under the contract." *Zimpro I*, 308 N.W.2d at 810. In *Zimpro I*, this court concluded that respondent is a contractor [2] but was unable to determine from the record the tax consequences of the transaction.

Resolution of this issue depends on the characterization of the sewage treatment equipment sold to MWCC. If the equipment is classified as personal property, then the transaction is tax free because of MWCC's status under Minn.Stat. §§ 473.-501–.549 (1982); on the other hand, if the equipment constitutes an improvement to real property, then a taxable event occurred when respondent purchased the materials necessary for fulfilling its contract with the MWCC.

■ 1. Chapter 297A imposes an "excise tax of four percent of the gross receipts from sales at retail * * *." Minn.Stat. § 297A.02 (1982). In order for a transaction to be taxable, therefore, it must meet two requirements: (1) it must be a sale of tangible personal property, and (2) it must be at the retail level. A sale at retail is "a sale for any purpose other than resale in the regular course of business." Minn.Stat.

§ 297A.01, subd. 4 (1982). The instant transaction was obviously "retail" because the MWCC intended to use the Zimpro system; MWCC did not intend to resell the system in the ordinary course of business.

■ In this case, we must first decide whether the transaction between Zimpro and the MWCC was a sale of "tangible personal property" as defined under Minn. Stat. § 297.01, subd. 11 (1982). The statute defines a sale as "[a]ny transfer of title or possession, or both, of tangible personal property * * *." Minn.Stat. § 297A.01(3)(a) (1982). The outcome of this case depends upon the interpretation of the definition of tangible personal property under Minn.Stat. § 297A.01, subd. 11 (1982). Under the plain meaning of the statute, it seems clear that respondent's equipment satisfies the description of property "which is to become a fixture." *Id.* The presence of the term "fixture", however, clouds the issue.

Appellant asserts that the system installed by respondent was a fixture or improvement to real property prior to its installation. Assuming this to be true, appellant concludes that respondent's system falls outside of chapter 297A's definition of tangible personal property. This argument stretches the logic of the definition of tangible personal property. *See* Minn.Stat. § 297A.01, subd. 11 (1982) (quoted *supra*). Following appellant's logic would render almost every installation upon realty to be a fixture prior to attachment; the result would be a decision that created more confusion than already exists as to what is taxable as personal property.

1. Minnesota statutes section 297A.01, subdivision 4, provides in part:

Sales of building materials, supplies and equipment to owners, contractors, subcontractors or builders for the erection of buildings or the alteration, repair or improvement of real property are "retail sales" or "sales at retail" in whatever quantity sold and whether or not for purpose of resale in the form of real property or otherwise.

Minn.Stat. § 297A.01(4) (1982).

2. The Ramsey County District Court concluded that respondent was not a statutory contractor

in its original memorandum granting summary judgment to respondent. Although this court concluded in *Zimpro I* that respondent was a contractor, on remand the Ramsey County District Court again concluded that respondent was not a statutory contractor. We do not belabor this issue, however, because respondent's status as a contractor is not controlling; rather the nature of the property and the transaction control respondent's status and the tax consequences of the transaction.

In *Abex Corporation v. Commissioner of Taxation,* 295 Minn. 445, 207 N.W.2d 37 (1973), we decided whether certain machinery was real or personal property for purposes of determining whether a property tax exemption applied to the property. Abex contended that ponderous foundry machinery was personal property and exempt from property tax.[3]

The *Abex* decision first noted that a statute creating an exemption[4] must be narrowly construed, relying on the well-established rule that taxation is the rule and exemption is an exception in derogation of equal rights. *Abex,* 295 Minn. at 452, 207 N.W.2d at 41–42. Because the statute at issue in *Abex* did not define tangible personal property and because the property tax statute included fixtures in its definition of real property,[5] the *Abex* opinion's analysis focused on whether the ponderous foundry machinery constituted a fixture. The *Abex* court examined the following factors to determine whether the machinery constituted a fixture:

(a) To be a fixture, the property must be annexed in either an actual or constructive manner.

(b) There must also be an intent to make the property a permanent accession to the freehold.

*Abex,* 295 Minn. at 455–56, 207 N.W.2d at 43–44.[6] We concluded that the machinery was a fixture and therefore subject to the

property tax. *Abex,* 295 Minn. at 466, 207 N.W.2d at 43–45.

If *Abex* controls the outcome of the instant case, there is little doubt that Zimpro's sewage treatment system would be characterized as an improvement to real property or a fixture; the taxable event would then have occurred when Zimpro purchased materials and equipment to fulfill its contract with the MWCC. *Abex,* however, does not control the instant case. The property tax statute has been amended since the *Abex* decision. *Abex* held "that certain ponderous foundry equipment which filled an 80,000 square-foot building, seven stories high, was real property and taxable. Now under Minn.Stat. § 272.03, subd. 1(c), it is not taxable even if the common law would classify it as real property." *KDAL, Inc. v. County of St. Louis,* 308 Minn. 101, 104, 240 N.W.2d 560, 561 (1976).

Notwithstanding the inapplicability of *Abex,* reference to Minnesota Statutes chapter 272, the general provisions of the property taxation scheme, is helpful. Appellant dismisses respondent's argument that the property tax statute and sales tax statute should be construed consistently. Moreover, while appellant questions the wisdom of intermingling the property tax and sales tax statutes, appellant relies on *Abex,* a case that construed an exemption to the property tax statute. Reliance on

---

**3.** The statute in effect when the machinery was purchased provided in part:

All property described in this section to the extent herein limited shall be exempt from taxation:

\* \* \* \* \* \*

(b) Tools and machinery which *by law* is considered as personal property used or useable \* \* \* in the manufacture, processing, production, sale or distribution of marketable products. \* \* \*.

Minn.Stat. § 272.02(11)(b) (1969) (emphasis added). The language "*by law*" created the controversy and prompted the discussion regarding the law of fixtures.

**4.** The instant case, in contrast to *Abex,* does not involve a statutory exemption, but rather involves a transaction with a statutorily exempt entity.

**5.** In addition, the definition of personal property under the property tax statute construed in

*Abex* excluded fixtures. *Abex,* 295 Minn. at 452, 207 N.W.2d at 42. The present property tax statute, however, includes fixtures generally in its definition of real property but excludes trade fixtures. *See* Minn.Stat. § 272.03, subd. 1(c) (1982).

**6.** Other courts have resorted to a three-part test requiring:

(1) Actual annexation to the realty;

(2) Appropriation for the purpose of the realty;

(3) And intention to make the property a permanent accession to the freehold.

*See Teaff v. Hewitt,* 1 Ohio St. 511, 530 (1853); *See also Wisconsin Dept. of Revenue v. A.O. Smith Harvestore,* 72 Wis.2d 60, 240 N.W.2d 357 (1976); *Premonstratensian Fathers v. Badger Mut. Ins. Co.,* 46 Wis.2d 362, 175 N.W.2d 237 (1970).

*Abex* and its focus on the law of fixtures would erect a barrier to clear analysis.

■ Minnesota Statutes section 272.03, subd. 1(c), excludes "tools, implements, machinery, and equipment attached to or installed in real property for use in the business or production activity conducted thereon, regardless of size, height or method of attachment" from the definition of real property taxable under chapter 272. Juxtaposing this exclusion with the definition of tangible personal property contained in Minn.Stat. § 297A.01, subd. 11, provides a consistent scheme of taxation.[7] Clearly, the legislature did not intend to exclude property from both the property tax statute and the sales tax statute.

■ Finally, if we adopt appellant's argument, the sales tax statute and its interpretation would be transformed into an even more confusing quagmire. Appellant's assertions would require merchants to understand the common law of fixtures in order to determine whether a taxable transaction occurred for purposes of the sales and use tax. Although the sales and use tax statute does refer to fixtures, the type of property included within the statutory definition seems to be clearly and logically defined in Minn.Stat. § 272.03, subd. 1(c). In addition, use of chapter 272 definitions

for sales and use tax purposes promotes certainty and consistency; determining whether a transaction is taxable under chapter 297A would become more certain in contrast to a determination requiring reference to the uncertain law of fixtures. Authority for the use of chapter 272 as an aid in interpreting the provisions of chapter 297A is provided by *Corbin v. Commissioner of Revenue,* 307 Minn. 237, 240 N.W.2d 809 (1976). The *Corbin* decision stated:

> We note that the Tax Court, in discussing this question, relies directly and exclusively on certain statutes dealing with the use tax and does not mention sales tax statutes in its memorandum. The use tax statutes and sales tax statutes are not interchangeable. * * * *While the Tax Court may employ the use tax statutes as a guideline for interpreting legislative intent, it is improper for the Tax Court to rely exclusively on use tax statutes to decide a sales tax question.*

*Corbin,* 307 Minn. at 240–41, n. 2, 240 N.W.2d at 811–12, n. 2. (Emphasis added.)

■ 2. Appellant also argues that respondent is a contractor and that therefore the transactions entered into by respondent to fulfill its contractual obligations to the MWCC were: "Sales of buildings materials,

---

7. Minnesota Statutes section 272.03, subdivision 1, provides the following definition of real property:

> (a) For the purposes of taxation, "real property" includes the land itself and all buildings, structures, and improvements or other fixtures on it, and all rights and privileges belonging or appertaining to it, and all mines, minerals, quarries, fossils, and trees on or under it.
> (b) A building or structure shall include the building or structure itself, together with all improvements or fixtures annexed to the building or structure, which are integrated with and of permanent benefit to the building or structure, regardless of the present use of the building, and which cannot be removed without substantial damage to itself or to the building or structure.
> (c)(i) The term real property shall not include tools, implements, machinery, and equipment attached to or installed in real property for use in the business or production activity conducted thereon, regardless of size, weight or method of attachment.

> (ii) The exclusion provided in clause (c)(i) shall not apply to machinery and equipment includable as real estate by clauses (a) and (b) even though such machinery and equipment is used in the business or production activity conducted on the real property if and to the extent such business or production activity consists of furnishing services or products to other buildings or structures which are subject to taxation under this chapter.

Minn.Stat. § 272.03, subd. 1 (1982). The definition of personal property under the Sales and Use Tax Statute is:

> Subd. 11. "Tangible personal property" means corporeal personal property of any kind whatsoever, including property which is to become a fixture or which is to lose its identity by incorporation in or attachment to real property.

Minn.Stat. § 297A.01, subd. 11 (1982). Property taxable as corporeal personal property under Minn.Stat. § 297A.01, subd. 11 (1982), should not also be taxable as real property under Minn.Stat. § 272.03, subd. 1 (1982).

supplies and equipment to owners, contractors, subcontractors or builders for the alteration, repair or improvement of real property * * *." Minn.Stat. § 297A.01, subd. 4 (1982). The purchase of pumps, filters, and pipes is not analogous to the sale of lumber, nails, cement, or bricks which is what appellant urges this court to hold. *See, e.g., County of Hennepin v. State,* 263 N.W.2d 639 (Minn.1978). Chapter 297A does not provide a statutory definition of the term "contractor" as the trial court implies in its memorandum. The characterization of respondent as a contractor is not controlling. The central issue is the classification of the property transferred under the sales and use tax statute. *See Zimpro I,* 308 N.W.2d at 811.

*County of Hennepin v. State,* 263 N.W.2d 639 (Minn.1978), directly addressed the contractor issue as it related to the sales and use tax statute holding "that the sale of raw steel" to a joint venture that subcontracted out the fabrication, erection and incorporation of the steel into the County of Hennepin Government Center was a taxable retail sale under Minn.Stat. § 297A.01, subd. 4 (1982). 263 N.W.2d at 640. *County of Hennepin,* however, is clearly distinguishable from the instant case. Steel that is to be incorporated into the *structure* of a building falls squarely within the building materials provision of Minn.Stat. § 297A.01, subd. 4 (1982); the steel was an integral part of the building itself and therefore the status of the joint venture was important in determining whether the sale was at a retail level. In contrast to *KDAL,* Zimpro's sewage treatment system is not an integral part of the MWCC Pigs Eye Plant and the retail level issue is not relevant. In *County of Hennepin* the status of the joint venture controlled whether the transaction was taxable under Minn. Stat. § 297A.01, subd. 4, because the steel was clearly a building material and was not even arguably "tangible personal property" as defined in Minn.Stat. § 297A.01, subd. 11 (1982). The controlling and disputed issue in the instant case, however, is the nature of the property, not the status of respondent.

We hold that Zimpro's sewage treatment system can be characterized as tangible personal property and was sold to MWCC at the retail level.

Affirmed.